T. M. THOMAS ET AL. v. BANK OF BEAUFORT ET AL.

(Filed 17 May, 1922.)

**1. Payment—Application—Debt.**

Where a debtor owes two or more debts to the same person, the creditor must apply a partial payment thereon in accordance with the direction of the debtor made at or before the time the payment was made.

**2. Same—Trusts—Contracts—Banks and Banking—Defalcation.**

A defaulting cashier of a bank used a part of the misappropriated funds in his father's business, and after the death of the latter, his heirs at law entered into a written agreement with the bank that the administrator repay the amount of the default out of the father's estate, to the extent available, and the defaulting son by the same instrument pledged certain of his notes and securities to the payment of the balance, the whole amount of the repayment not to exceed a certain sum: *Held,* the bank under the terms of the trust was not entitled to credit the proceeds of the notes and securities of the defaulting son, beyond the specified sum, without the consent of all of the parties to the agreement.

APPEAL by plaintiffs from *Cranmer, J.,* at March Term, 1922, of CARTERET.

Prior to 7 August, 1916, Thomas Thomas was, and had been for many years, the cashier of the defendant bank, and by reason of his misappropriation of the funds and securities of said bank, he was short in his accounts to the amount of $71,000. His father, Alonzo Thomas, was in default as treasurer of Carteret County, and as was also Thomas Thomas, who succeeded him as treasurer. Representatives of the said Alonzo Thomas's estate, Thomas Thomas, and the plaintiff in this case, for the purpose of making safe these shortages to the county, and to the bank, and of presenting to the Governor an application for the pardon of the said Thomas Thomas on the ground that they had been made good, which pardon was thereby obtained, entered into an agreement with the bank 13 March, 1917, hypothecating certain notes and mortgages, among them two belonging to Thomas Thomas, as follows:

"Whereas the parties of the first part have executed their several notes and mortgages to the party of the second part to secure such sums as may be due and owing said bank by the said Thomas Thomas, the former cashier, and whereas it is ascertained and has been admitted that the estate of Alonzo Thomas, deceased, is indebted to the said bank in the sum of $40,476.28 for moneys of said bank used in the business of said Alonzo Thomas, through the said Thomas Thomas, cashier, and it appearing that an administrator with the will annexed of the estate of Alonzo Thomas has been appointed to wind up said estate and pay its debts:

"Now, therefore, the said parties of the first part agree to and with said party of the second part, that said mortgages and notes so executed by them are hereby in all respects confirmed for the purpose of securing said bank to the sum not exceeding $55,000 to be reduced by the application by the administrators of said Alonzo Thomas's estate so far as the assets of said estate coming into their hands for such purpose.

"It being agreed that said notes and mortgages shall be held by said bank only for such sum as may be due to said bank by said Thomas Thomas, not exceeding $55,000, after the payment to said bank of all such sums as said administrators shall realize from said estate of said Alonzo Thomas for such purpose."

At the trial the following facts were agreed upon:

"1. That the plaintiff's two mortgages, together with the mortgage given by Isabella Midgette for $7,000 and a mortgage given by Mrs. Julia Perry for $5,000 and a mortgage given by Thomas Thomas and wife for $8,000 and an assigned mortgage made by Thomas Thomas to the Bank of Beaufort for $2,000, were held by the defendant on 13 March, 1917, both being dated 5 August, 1916, said securities being held at the date of the execution of the instrument dated 13 March, 1913, as copied in the eighth paragraph of the further defense set up by the defendant Bank of Beaufort in its answer filed 17 June, 1920, which instrument of 13 March, 1917, is made a part of this section as fully as if set out in full herein, said two mortgages of plaintiff and ratification dated 13 March, 1917, are hereby agreed to be valid and binding.

"2. That the said $55,000, and interest, is hereby credited with $49,651.68, being $40,478.28, with interest from 1 July, 1916, until 10 April, 1920, paid by the estate of Alonzo Thomas on 24 April, 1920.

"3. That without any agreement, except the agreement of 13 March, 1917, hereinbefore recited, the defendant Bank of Beaufort collected from the Thomas Thomas's assigned note and mortgage, described in the instrument of 13 March, 1917, on 17 April, 1920, $2,000, with interest thereon from 15 August, 1916, amounting to $2,664, and on 23 December, 1920, the defendant Bank of Beaufort collected on the Thomas Thomas $8,000 note and mortgage $5,076.81, being the proceeds of the foreclosure of the said instrument.

"4. It is agreed by the parties hereto that the payment by the estate of Alonzo Thomas shall go as a credit on the $55,000 liability, and it is contended by the plaintiffs that the two items paid from the Thomas Thomas assigned note and mortgage and his $8,000 assigned mortgage shall also go as a credit on the $55,000 liability. It is contended by the defendant Bank of Beaufort that the two said Thomas Thomas items shall be credited on the additional shortage which existed in excess of the $55,000 and interest, said outside shortage being sufficient in amount to consume the two Thomas Thomas payments.

"5. It is agreed that the plaintiff's liability secured on the mortgage deeds is 5/9 of the total balance due on the $55,000 mortgage and interest, based on Isabella Midgette's assuming 7/27 of the total liability and Mrs. Julia Perry's assuming 5/27 of the total liability, and that unless said respective amounts shall be assumed under the mortgage, such as are not assumed are to be hereafter adjusted as to the plaintiffs' liability, and a judgment herein is not to release the plaintiffs from any liability they would otherwise have on them under the facts hereinbefore set out and not to release their property so far as it would otherwise be legally liable for the same.

"6. It is agreed that the court shall pass upon the legal matters involved as to the application of the two Thomas Thomas items, with the right of exception and appeal by the two parties."

Upon this agreed state of facts the court adjudged that "the plaintiffs were not entitled to the credit of the two items of $2,664 and $5,076.81 received from the proceeds of the sale of the two Thomas Thomas items referred to in the third paragraph of the agreed statement of facts," and adjudged that there was a balance due and unpaid on the agreement of 13 March, 1917, including interest, of $17,392.12, interest, and that the defendant bank recover of the plaintiffs 5/9 thereof and the costs, and that the other 4/9 of said debt be treated as set out in the agreed facts, and directed a sale of the property referred to and in the manner prescribed.

The plaintiffs excepted: (1) That the court did not allow as a credit the Thomas Thomas items of $2,664 and $5,076.81, as set out in the above agreement of facts, and appealed.

*Ward & Ward and James D. Parker for plaintiffs.*
*Julius F. Duncan, Moore & Dunn, and Guion & Guion for defendants.*

CLARK, C. J. There is only one question raised by this appeal. By the agreement of these parties these securities were dedicated to pay the part of the $55,000 shortage which was not discharged by the Alonzo Thomas estate. The defendant bank, after crediting the $10,000 received from the surety company on the $71,000 shortage, took the two items involved in this controversy without the consent of any person connected with it and applied them to the excess over the $55,000 unpaid after crediting the bond proceeds.

The defendant bank, instead of applying the trust security as required by the contract, without authority from any of the parties of that instrument, applied the two items in controversy to a shortage over and above the $55,000 secured by the agreement.

It is settled law that where a debtor owes two or more debts and makes a payment, it must be applied according to his direction made at or before the time it was made. *French v. Richardson,* 167 N. C., 41; *Stone v. Ritch,* 160 N. C., 161; *Young v. Alford,* 118 N. C., 215; *Moose v. Barnhardt,* 116 N. C., 785; *Vick v. Smith,* 83 N. C., 80. The judgment must be modified by crediting the total amount of which the plaintiffs were charged with 5/9, with the said items. of $2,664 and $5,076.81 set out in plaintiff's exception.

It would seem a hardship that as Thomas Thomas is bound for the unpaid part of the excess of $55,000, that these funds should not be credited thereon, but the plaintiffs and the defendant, by the agreement of 13 March, 1917, agreed that these five papers should be applied to said sum of $55,000, and it is agreed therein that the proceeds thereof are to be devoted to the purpose of securing to the bank the sum not exceeding $55,000 to be reduced by the application by the administrators of said Alonzo Thomas's estate as far as the assets of said estate coming into their hands for such purpose; and it was further provided: "It being agreed that the said notes and mortgages shall be held by said bank *only* for such sum as may be due to said bank by said Thomas Thomas, not exceeding $55,000, after the payment to said bank of all such sums as said administrators shall realize from said estate of said Alonzo Thomas for such purpose."

The bank could not, therefore, take the principal debtor's securities under this hypothecation and apply them to outside shortage. It is true that Thomas Thomas is liable for the excess over $55,000, but by this agreement these two securities hypothecated by him were to be applied to the $55,000 debt only, and if not so applied, it would increase to that extent the sum to be collected out of the plaintiffs, the other parties to the agreement of 13 March, 1917, under which the securities were hypothecated.

Reversed.